UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHIRLEY WILLIAMS,

                         Plaintiff,

                                                                      <u>DECISION AND ORDER</u>

                                                                           04-CV-6227L

                         v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Shirley Williams ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security Disability Insurance ("SSDI") or Supplemental Security Income ("SSI") benefits.

The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, the Commissioner's motion (Dkt. #14) is granted, and this action is dismissed with prejudice.

## PROCEDURAL BACKGROUND

Plaintiff was born on May 3, 1959. She has a high school diploma and has worked as a housekeeper in a hospital, an institutional cleaner, a short order cook, and a hand packager. Plaintiff applied for SSDI benefits on August 6, 1998, alleging disability since May 23, 1998 due to back and knee problems. (T. 215-18). This application was denied initially and on reconsideration. (T. 31, 32). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held

on April 14, 2000. (T. 708-29). On May 11, 2000, the ALJ found that plaintiff was not disabled. The Appeals Council remanded the case for further administrative proceedings on August 24, 2001. (T. 97-98; 143-51).[1]

On March 4, 2002, a supplemental hearing was held before an ALJ, at which plaintiff appeared and testified. (T. 667-705). On March 27, 2002, the ALJ found for a second time that plaintiff was not disabled. The Appeals Council, however, remanded the case again for further proceedings. (T.179-80). A third hearing was held on May 21, 2003, at which plaintiff appeared with her attorney and testified. At this hearing, the ALJ also took the testimony of a vocational expert and a medical expert in clinical psychology. (T. 603-66). On June 26, 2003, the ALJ[2] found for a third time that plaintiff was not disabled at any time from the date of her first application through the date of decision. (T. 16-30). The ALJ's decision became the final decision of the Commissioner on April 2, 2004, when the Appeals Council denied plaintiff's request for review. (T. 9-12). Plaintiff filed this action, *pro se*, on May 20, 2004.

### DISCUSSION

**I.  Definition of Disability**

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot,

---

[1] In July and August 2000, respectively, plaintiff filed an application for SSI benefits and a subsequent application for SSDI benefits. These applications were consolidated with plaintiff's first application, when it was remanded by the Appeals Council.

[2] This ALJ was different from the one who presided over plaintiff's first hearing.

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B). To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

> The Second Circuit has described the five-step process as follows:
>
> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.     The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, May 23, 1998. At step two, the ALJ found that plaintiff had impairments (including an alcohol dependence disorder, a personality disorder, degenerative changes of the lumbar spine and degenerative changes of the right knee) that were severe within the meaning of the regulations. At step three, the ALJ concluded that none of these impairments, either alone or in combination, met or medically equaled a listed impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined at step four that plaintiff was not disabled because she retained the residual functional capacity to perform her past relevant work as a short order cook. (T. 27). Alternatively, the ALJ found that plaintiff was not disabled at step five. Based on the vocational expert's testimony, the ALJ concluded that plaintiff retained the

residual functional capacity to perform other work that exists in the national economy, including that of a cafeteria attendant and cashier. (T. 27-28).

### III.     Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999)

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled.  Plaintiff elected not to file a formal response to the Commissioner's motion. (*See* Pl. letter dated April 19, 2005, at Dkt. #15).  Nevertheless, the

record before the Court contains several documents plaintiff filed, both before and after the Commissioner's motion, that set forth her contentions on appeal. For instance, plaintiff filed a "response" to the Commissioner's Answer. In it, she argued that the ALJ erred in finding her not disabled because one of her treating physicians, Dr. Thomas G. Rodenhouse, found that plaintiff was "totally disabled" from June 6, 1997 through May 19, 2004. (*See* Pl. "Response" to the Answer of the Commissioner, at Dkt. #9). Plaintiff also filed medical reports dated May 12, 2004, August 23, 2004, September 28, 2005, all of which post-date the Commissioner's final decision here, that she asks this Court to consider when deciding her case. (Dkts. #4, #9, #16).

For the reasons stated below, I find that the Commissioner's decision is supported by substantial evidence and is based on a proper application of the applicable legal standards.

## IV.   Evidence that Plaintiff is not Disabled

Plaintiff contends that the medical evidence in the record demonstrates that her impairments prevent her from performing any and all work, and that she is totally disabled. I disagree.

There is no dispute that plaintiff does have impairments (degenerative changes of the lumbar spine and right knee, an alcohol dependence disorder, and a personality disorder), and that those impairments are "severe" within the meaning of the Act. Nevertheless, substantial evidence supports the ALJ's conclusion that these impairments do not prevent plaintiff from returning to her previous work as a short order cook, or from performing other work in the national economy. Importantly, not one physician, treating or consultative, gave an opinion that, because of her impairments, plaintiff was unable to perform *any* work for a continuous period of at least twelve months during the relevant period.

The record shows that plaintiff injured her back in 1995 while working at Kodak as a cleaner/scrubber. Plaintiff reinjured her back in 1996 and left Kodak shortly thereafter. She received Workers' Compensation benefits for these injuries. (T. 380; 610).

In January 1997, plaintiff saw Dr. Rodenhouse, a neurologist and surgeon, complaining of mid to upper lumbar spasms and tightness. A magnetic resonance imaging scan ("MRI") performed

on May 23, 1997, revealed a far left disc herniation at L3-4 which did not cause significant neural foraminal encrouchment. (T. 90-91; 170-71). Dr. Rodenhouse recommended that plaintiff continue with conservative treatment, and he did not recommend surgery.

Plaintiff continued to complain of severe low back pain and to seek treatment for it. Despite several MRIs during the relevant time period, there were no significant findings that required anything other than conservative care. For instance, in June of 1998, Dr. Rodenhouse opined that he did not believe plaintiff had a disc protrusion. (T. 391). In March of 1999, Dr. Rodenhouse confirmed this opinion after a recent MRI "did not reveal any significant abnormality. A small far lateral 3-4 disc is demonstrated without any root compression." Dr. Rodenhouse recommended physical therapy. (T. 373). On June 5, 2002, Dr. Rodenhouse opined that the "small, far lateral L3-4 disk protrusion on the left . . . seemed to resolve." (T. 584). A July 13, 2002 MRI showed no significant disc abnormality and reported only mild facet joint degenerative changes at L4-5 level. (T. 521).

Plaintiff also alleges severe disabling right knee pain and swelling. A January 28, 1999, MRI of plaintiff's right knee, however, showed only degenerative changes. The tendons, ligaments and bony structures appeared otherwise unremarkable. (T. 386). Plaintiff was diagnosed with arthritis. Likewise, in 2001, plaintiff began complaining of pain in her hips, but after a complete series of films were taken in March of 2002, radiologist Dr. Johnny Monu reported only normal findings. (T. 564).

The ALJ carefully weighed all of these and other medical opinions regarding plaintiff's impairments and limitations, as well as the signs, symptoms, and laboratory findings, including plaintiff's allegations of pain, and he made a determination regarding plaintiff's residual functional capacity ("RFC"), in accordance with 20 C.F.R. §§ 404.1545 and 416.945. At step four, the ALJ concluded that, despite her impairments, plaintiff could perform a limited range of light work.[3] The

---

[3] Light work involves lifting no more than 20 lbs. at a time with frequent lifting or
(continued...)

ALJ found that plaintiff could lift and carry 20 lbs. occasionally, 10 lbs. frequently, that she could stand and walk six hours a day, and sit for six hours a day. Plaintiff was limited to only occasional stooping, bending, and climbing stairs, and she could not do repetitive lifting. (T. 27). As for her mental capacity to perform work-related activities, the ALJ determined that plaintiff had good concentration, persistence, and pace, and had a fair ability to work with coworkers and supervisors.

The ALJ's RFC finding is supported by the above-cited medical evidence, as well as other substantial evidence in the record. For instance, in September 1998, consultative examining physician, Dr. Samuel Balderman, opined that plaintiff was mild to moderately limited in walking and standing, mildly limited in sitting, and moderately limited in kneeling, bending, and climbing stairs. (T. 348). On September 20, 2000, consultative examining orthopedist, Dr. John Cosby, opined that plaintiff was able to walk, bend, stand, and lift without restriction, and could use her hands for fine and gross motor activity. (T. 410-12). A September 29, 2000, physical RFC assessment of State agency review physician, Dr. Janis L. Dale, also supports the ALJ's functional assessment that plaintiff could perform certain light work. (T. 414-21).

Moreover, the ALJ's finding that plaintiff's mental impairments resulted in a "fair" ability to work with coworkers and supervisors, and that she had "good" concentration, persistence, and pace is also supported by substantial evidence, including the January 5, 2001 consultative psychiatric evaluation of John Thomassen, Ph.D. (T. 441-44), and the January 18, 2001, mental RFC assessment and psychiatric review technique evaluation completed by State agency review psychiatrist Dr. Raphael Leo. (445-62). In addition, it is consistent with the hearing testimony of clinical psychologist Charles Sibley, Ph.D. Dr. Sibley gave his opinion that between April 2000 to April

---

[3](...continued)
carrying of up to 10 lbs. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b); 416.967(b).

2001 plaintiff had an alcohol dependence disorder[4] and a personality disorder, but that neither was sufficient to meet the listing requirements under Sections 12.08 and 12.09. (T. 653-57). He concluded that she had mild limitations in activities of daily living, marked social limitations, moderate concentration, persistence, and pace limitations, and no repeated episodes of decompensation. (T. 655).

Although there is conflicting evidence in the record that plaintiff's impairments caused a somewhat more restrictive RFC than what the ALJ found, it was within the purview of the ALJ to evaluate these conflicting opinions and, based on the record as a whole, accord them the appropriate weight. *See Veino*, 312 F.3d at 586 ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner).[5]  It is clear from his decision that the ALJ carefully weighed these opinions, and explained the weight he accorded to each of them. (T. 26-27). The ALJ's RFC assessment, therefore, is based on a proper application of the Commissioner's regulations and is supported by substantial evidence.

Moreover, the ALJ's decision is supported by the testimony of a vocational expert. The ALJ employed vocational expert Peter Manzi to testify and to give an opinion about plaintiff's ability to perform her past relevant work and other work in the national economy. *See* Social Security Ruling 83-12, 1983 WL 31253 (S.S.A.). At the hearing, the ALJ asked Manzi a number of hypothetical

---

[4] The record shows that plaintiff stopped drinking heavily by June of 2001 (T. 552), and at the time of the hearing reported to drinking only wine on holidays or other special occasions. (T. 639).

[5] For instance, on January 5, 2001, consultative examining physician Dr. Ejaz M. Khan opined that plaintiff was moderately to severely limited in her ability to lift, carry, pull, and push. Dr. Khan's evaluation, however, appears to be based on plaintiff's subjective complaints and only a one-time examination of the plaintiff. (T. 436-39). In addition, the June 19, 2001 employability assessment completed by the Jefferson Family Practice medical group, which found that plaintiff was "very limited" in several exertional capacities, was not entitled to the any significant weight because it was completed by K. Snow-Holmes, a nurse-practitioner. Under the Commissioner's regulations, a nurse-practitioner is not an "acceptable medical source" who can give a medical opinion establishing an impairment. *See* 20 C.F.R. §§ 404.1513(a); 416.913(a).

questions involving different levels of limitation of function. In response to all of the questions, Manzi identified several jobs that plaintiff could do, even with her impairments, including her past relevant work as a short order cook, as well as that of a cafeteria attendant (which is unskilled light work with 104,710 positions nationally and 460 regionally) and a cashier II (which is unskilled light work with 853,000 positions nationally and 2,903 regionally). (T. 658-65).

Plaintiff argues that her primary care doctors, physical therapists, orthopedists and, in particular, Dr. Rodenhouse, "diagnosed" her as totally disabled during the relevant period. She argues that her treating physicians' opinions, therefore, entitle her to SSDI and SSI benefits. I disagree. The statements of certain physicians, including Dr. Rodenhouse and Dr. Deborah Pierce, that plaintiff was "totally disabled" were not improperly disregarded by the ALJ, nor are they determinative of the issues here. It is well-settled that the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). A treating source's statement that a plaintiff "is disabled," however, is not considered a "medical opinion" under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.").

Moreover, many of the medical source statements upon which plaintiff relies were made in connection with plaintiff's Workers' Compensation case against Kodak. For instance, the record contains a June 6, 1997 letter that Dr. Rodenhouse sent to plaintiff's primary care physician at the Family Medical Center that stated that plaintiff "was disabled at this time from her employment as a maintenance person." (T. 377). In context, this opinion refers to plaintiff's inability during that particular time to return to her *past relevant work as a cleaner at Kodak*. It says nothing of plaintiff's ability to perform her *past relevant work as a short order cook* or her ability to perform

*other work* in the national economy. These reports, therefore, are not at odds with the ALJ's conclusion at steps four and five that plaintiff was not disabled. *See O'Dell v. Barnhart*, 332 F.Supp.2d 560, 563 (W.D.N.Y.2004) (treating physician's opinion that plaintiff was "non-employable and totally disabled" given as part of a Workers' Compensation case referred only to plaintiff's past relevant work, not his ability to do other work).

I also find that the ALJ's determination that plaintiff was not credible is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1529; 416.929. The ALJ concluded that plaintiff's testimony regarding the disabling nature of her pain and impairments was not supported by the medical record. In so concluding, the ALJ properly considered plaintiff's testimony and weighed it in accordance with various factors, including plaintiff's daily activities, the frequency of pain, the type, dosage, and side effects of medication, and other treatment that relieves pain. (T. 25). *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). It was reasonable for the ALJ to find that plaintiff's subjective complaints were not credible to the incapacitating extent alleged. (T. 24-25). There is evidence in the record that plaintiff was uncooperative during certain medical appointments, that she missed appointments, and that she refused to return to physical therapy. In addition, the ALJ found it persuasive that plaintiff testified that she had engaged in assaultive conduct and possibly criminal behavior in the past (including possible income tax evasion), and that there were significant inconsistencies in her testimony.

It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir.1984); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A.). Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner. 42 U.S.C. § 405(g); *Parker v. Harris*, 626 F.2d 225 (1980); *see also Glaze v. Barnhart*, 242 F.Supp.2d 233, 236 (W.D.N.Y.2003); *Crowley v. Barnhart*, 220 F.Supp.2d 176, 181 (W.D.N.Y.2002).

Finally, the additional medical evidence submitted by plaintiff to the Court does not require a different result. Plaintiff filed several pages of updated medical records, including the results of a May 2004 myelogram, as well as two reports of Dr. Rodenhouse (one dated August 23, 2004 and that other dated September 5, 2005) all of which post-date the ALJ's decision. (Dkt. #4, #9, #16). A court may order the Commissioner to consider additional evidence, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). Under this standard, the proffered evidence must be material, *i.e.*, relevant to the time period at issue and probative. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1991). Here, the "new" medical evidence is from a time period after April 2, 2004, the date that the Commissioner's decision became final. As such, it is not relevant to the time period at issue. Furthermore, evidence regarding the nature and severity of plaintiff's impairments since 2004 may show that her impairments have worsened since the ALJ's decision, but it is not germane to whether the ALJ's decision is supported by substantial evidence.[6]

I find, therefore, that the ALJ properly concluded at step four that plaintiff was not disabled because she could return to her prior work as a cook. Substantial evidence also supports the ALJ's alternate conclusion at step five that, given plaintiff's age (forty-four at the date of the decision), education (high school), and work experience, she could perform other jobs that exists in the national economy. I do not believe the record supports plaintiff's argument that she is totally disabled.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #14) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 3, 2006.

---

[6] The Court's instant decision, of course, does not preclude plaintiff from filing a new application for benefits with the Administration based on her worsening condition and recent medical reports.

- 11 -